UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KIMBERLY SIMON                          CIVIL ACTION NO. 13-CV-3074

VERSUS

SCHLUMBERGER TECHNOLOGY              MAGISTRATE JUDGE HANNA
CORPORATION


MEMORANDUM RULING

Before the court is the motion for summary judgment filed by Defendant

[Rec. Doc. 18] seeking dismissal of the plaintiff's claims against it under the

Americans with Disabilities Act.  For the reasons set forth below and discussed at

oral argument on December 16, 2014, the motion is DENIED.

**Facts and Procedural Background:**

Plaintiff Kimberly Simon has a college degree in chemical engineering.  In

July, 2012, she was hired by Schlumberger Technology Corporation

["Schlumberger"] as a field engineer trainee in its drilling and measurements

section.  She requested no accommodations during the application or interview

process.[Rec. Doc. 18-4, p. 26].  She passed a required functional capacity test

before beginning her assignment; she again did not ask for any accommodation.

[Rec. Doc. 18-4, p. 29]. She was sent for training in Youngsville, Louisiana,

including 8 weeks of classroom and on-the-job training. [Rec. Doc. 18-4, p. 43].

The training was designed to prepare participants to pass the entrance examination

for admission to the more advanced Schlumberger Learning Center in Houston, Texas.

During her training, Simon came to understand that Schlumberger accommodates employees in need of reasonable accommodations. [Rec. Doc. 18-4, p. 30]. Soon after arriving at the Youngsville training site, she requested a private bathroom in the company-provided housing. [Rec. Doc. 18-4, pp. 35, 40-42]. She disclosed that she had an inflammatory bowel disease (colitis). [Rec. Doc. 18-4, p. 54].   She did not request any accommodation regarding the training course, nor did she notify the employer that her condition impaired her ability to complete the course.  Plaintiff was provided with the requested private bathroom. Also during the Youngsville training, Simon asked for time off for doctor's appointments, which were allowed, without adverse consequences. [Rec. Doc. 18-4, pp. 37-38]. As a consequence of her doctor's appointments, Simon's medications were changed in October.

At the end of the training program, the trainees, including Simon, were enrolled in Schlumberger's Learning Center in Houston, Texas.  Each was required to pass an entrance exam to continue employment.  Trainees who failed the examination on the first try were given a single retest opportunity. [Rec. Doc. 18-4, p. 47].   On leaving Youngsville for Houston, days after her medications had

3

been changed, Simon notified her manager/instructor (Adrian Moss) that she did not feel ready for the exam.  She gave no other detail; she did not mention her medical condition or request an accommodation, and she did not ask for medical leave. [Rec. Doc. 18-4, pp. 20, 33, 49, 64-65].  She was encouraged to take practice tests and to study.[Rec. Doc. 18-4, p. 50]. Simon  understood that passing the entrance exam was a condition of her employment, an essential function of her position. [Rec. Doc. 18-4, pp. 64, 129].

Once in Houston, Simon  requested no accommodation for the exam. [Rec. Doc. 18-4, pp. 64-65, 67]. She failed the entrance examination on her first attempt October 29, 2012.  She met with her instructor (Franklin Linares Scarione), and together they identified weakness areas/topics, and they confected an action plan, which Simon signed. [Rec. Doc. 18-3, pp. 18-19]. She was encouraged to ask for help if she had any difficulties or needed assistance.  She asked for no accommodation. [Rec. Docs. 18-3, p. 18; 18-4, pp. 67-69]. Simon was reminded that scoring below the pass mark a second time would result in automatic release from the training center.  She did not tell her Houston instructors that she was not ready to take the examination or that she needed time off. [Rec. Doc. 18-4, p. 77]. Per Simon, she told no one in Houston that she had colitis; she did not tell her

4

instructor she was on medication.  She knew she was going to fail and had given up. [Rec. Doc. 18-4, p. 70].

Simon overslept and arrived one hour late for her second testing, and she was disciplined.  She did not request accommodations or otherwise blame her tardiness on a medical condition. [Rec. Doc. 18-4, pp. 71-72]. She failed the examination on her second attempt on October 31, 2012.  She was released from the Learning Center and told to report to her direct manager.  She again requested no accommodation.  Simon signed an acknowledgment that she received a Release Letter from the Learning Center due to her failure to pass the entrance exam on two attempts. On the same date, she acknowledged receipt of a Written Warning regarding her tardiness. [Rec. Doc. 18-3, pp. 16-17]. She met with her instructor again, and she told him she had been really sick.  She did not mention colitis or her medications. [Rec. Doc. 18-4, p. 74]. She was told she would be fired. [Rec. Doc. 18-4, p. 76].

On November 1, 2012, Schlumberger's Youngsville Human Resources manager (MaryElizabeth Lackey) learned of Simon's second failure (she also received notice of another trainee's failure).  On November 2, 2012, the day she was scheduled to be terminated, Plaintiff emailed her Houston instructor at 12:24 a.m.  She told him she had reviewed her study habits and tried to determine what

5

she had done wrong.  She concluded that she had not had proper pre-training on a rig or not enough rig time.  She referenced her scheduled termination, and she asked for his help.  "Tomorrow, November 2nd I am scheduled for my termination at 3 p.m. ... NGC has a no tolerance policy for school failures.  When someone fails they are fired, no exceptions." [Rec. Doc. 18-5, p. 6].

Per company policy and as scheduled, Plaintiff met with HR Manager Lackey on November 2, 2012.  Her instructor Adrian Moss was also present. Plaintiff knew she would be terminated because of the two exam failures.  On this date, Plaintiff notified the manager for the first time that she was sick, and she requested accommodation–to take the exam a third time after she controlled her medical condition. [Rec. Doc. 18-4, pp. 53, 107].  The termination was temporarily delayed so that Plaintiff could access and complete Schlumberger's ADA Accommodation paperwork, including documents to be completed by her healthcare provider. [Rec. Doc. 18-3, pp. 21-26]. Simon testified that she "never really looked at what she handed me.  To be honest, I just took it, gave it to my doctor.  I never read through it." [Rec. Doc. 18-4, p. 79]. According to Simon,

> A.    I do not recall.  I do remember that he was–they were confused
>        by it and they didn't know what to say.  And I was also
>        confused because I said–what I told him was, I guess they need
>        to know that I can do this job just with medication.  That's
>        what I told her because I can physically do the job, but I was

6

scared that if they put anything otherwise, that I would be fired because I can't physically do the job.  So I said–I remember she told me she was confused by it, and then that's what I told her. [Rec. Doc. 18-4, p. 81].

\*\*\*

A.     I said that–I said: From my understanding, I said, she just needs to know that I do have a medical condition, but that I can physically do the job.  That's what I told her.

Q.     All right.  Did you tell her to say anything about your difficulties with taking the exam?

A.     No, because I didn't know what the paperwork was.  I was very confused by what she wanted.  I was scared because I thought that she wanted–she was  going to try to fire me if it's–you know, if it said that I couldn't physically do something, which I can physically do everything. [Rec. Doc. 18-4, p. 82].

On November 9, 2012, the HR manager received a fax from the office of Plaintiff's medical provider: "Ok to perform job duties [and] descriptions with her medical diagnosis of colitis.  This will not interfere [with] her job...." [Rec. Doc. 18-3, p. 32]. Although other forms had been provided by the company to the physician[1], none were completed.  No special accommodations were referenced. On receipt of the documentation, the manager resumed the termination meeting and Plaintiff was terminated for failing to pass the entrance exam on two attempts.

---

[1]Included in the forms identified in the record is a letter to the physician from the patient, authorizing direct communications with the employer.  The copy in the record is unsigned. "A Clarifying Accommodations Form" asking for details about medical diagnosis, medications, and side effects of medications is also in the record.  It was not completed. [Rec. Doc. 18-3, pp. 22-26]

The manager told Plaintiff she did not get the documentation that would have allowed Plaintiff to reschedule the school. [Rec. Doc. 18-4, pp. 83-84].

After going through the EEOC administrative process, Plaintiff filed suit in the 15th Judicial District Court in Lafayette Parish, Louisiana on October 7, 2013. [Rec. Doc. 1-2]. She asserted that her employer Schlumberger discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., by failing to accommodate her disability and the side effects of her medication, and terminating her employment because of her disability.  On November 14, 2013, the case was properly removed to this Court based on federal question jurisdiction.

***Positions of the Parties:***

In the motion before the court, Schlumberger urges that Plaintiff requested and received reasonable accommodations from her employer during her pre-test training in Youngsville, Louisiana, and though she stated to her manager that she was not ready for the required Schlumberger entrance exam, she made no request for disability-associated accommodation regarding the exams before she took them, even after she failed the first exam and was encouraged by her Houston instructor to ask for help if she had any difficulties or needed assistance. Defendant asserts that Plaintiff knew she would be terminated when she attended

8

the meeting with her HR manager, having failed the entrance exam twice, and she had referenced the meeting as a termination meeting before the fact.  Thus, the late request for accommodation by Plaintiff on learning of her termination amounted to a 'second chance' request, which is not a required accommodation under the ADA.  Defendant argues that Plaintiff cannot make out a *prima facie* case of discrimination based on disability, since she cannot establish that she was treated less favorably than non-disabled employees, and she fails to offer evidence to rebut Schlumberger's legitimate, non-discriminatory reason for the termination decision.

In response to the motion, Plaintiff argues that she was unable to pass the entrance exam in Houston and was sent back to her Youngsville location as a result of her illness and its complications.  She asserts that once she responded to her HR manager's questions about what happened, she disclosed that she had been extremely sick.  On that disclosure, the Schlumberger HR manager began the ADA-required interactive process by giving Plaintiff forms for her physician to complete regarding her illness.  When the paperwork was returned by the healthcare provider, wherein the provider declared that Plaintiff could perform the essential functions of her position, Defendant cut off the interactive process and terminated her, despite her requests that further inquiry be made with the

physician.  Plaintiff urges that this failure to go forward with the interactive process is a violation of the ADA.

## *Analysis  and Discussion*

### *The Summary Judgment Standard*:

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party carries its initial burden,

10

the burden shifts to the nonmoving party to demonstrate the existence of a genuine

issue of a material fact. *Id.*

If the dispositive issue is one on which the nonmoving party will bear the

burden of proof at trial, the moving party may satisfy its burden by pointing out

that there is insufficient proof concerning an essential element of the nonmoving

party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals

Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), *citing Celotex Corp. v. Catrett*,

477 U.S. at 325. The motion should be granted if the non-moving party cannot

produce evidence to support an essential element of its claim. *Condrey v. Sun

Trust Bank of Georgia*, 431 F.3d 191, 197(5th Cir. 2005).

**The Americans with Disabilities Act:**

The Americans with Disabilities Act prohibits certain employers from

discriminating against a qualified individual on the basis of her disability. 42

U.S.C. §12102 *et seq*.  The disputed conduct of the parties in this case occurred on

or after January 1, 2009, therefore the ADA as amended in 2008 applies.  Pub. L.

No. 11o-325, §8,122 Stat. 3553 (2008).  To prevail on her ADA claim, Plaintiff

must establish three elements: 1) she has a disability; 2) she is qualified for the

position in which she seeks employment; and 3) she was discriminated against by

an employer because of her disability.  *Griffin v. United Parcel Service, Inc.*, 661

11

F.3d 216, 222(5th Cir. 2011).  See also *Lee v. Harrah's New Orleans*, No. CIV.A.

11 570, 2013 WL 3899895, at *4 (E.D. La. July 29, 2013).  To make out a *prima*

*facie* claim of disability discrimination, Plaintiff must show that: "(1) she suffers

from a disability; (2) she is qualified for the job; (3) she was subject to an adverse

employment action; and (4) she was replaced by a non-disabled person or was

treated less favorably than non-disabled employees." *Shryer v. Univ. of Texas Sw.*

*Med. Ctr. at Dallas*, 14-10079, 2014 WL 5315358, *4 (5th Cir. Oct. 16,

2014)(*citing Milton v. Texas Dep't of Criminal Justice*, 707 F.3d 570, 573 (5th Cir.

2013) (internal quotation marks and alterations omitted).  If Plaintiff establishes a

*prima facie* case and Defendants provide a non-discriminatory reason for her

termination, she must then show that the proffered justification is pretext for

unlawful discrimination. *Gowesky v. Singing River Hosp. Systems*, 321 F.3d

503(5th Cir. 2003).

Under the ADA, to "discriminate" includes "not making reasonable

accommodations to the known physical or mental limitations of an otherwise

qualified individual with a disability ... unless such covered entity can demonstrate

that the accommodation would impose an undue hardship on the operation of the

business of such covered entity." 42 U.S.C. §12112(b)(5)(A). *Griffin v. United*

*Parcel Serv., Inc*., 661 F.3d 216, 222 (5th Cir. 2011).  A plaintiff must prove the

12

following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Feist v. La. Dept. of Justice, Office of Atty. Gen.*, 730 F.3d 450, 452(5th Cir. 2013).  See also *Tribble v. Ouachita Parish Police Jury*, 939 F.Supp.2d 626, 632, 2013 WL 1411810, at *5(W.D.La.2013).

Whether an individual is a qualified individual with a disability is determined as of the time of the employment decision.  The term "qualified," with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position she holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position. 29 C.F.R. §1630.2(m).

The ADA provides a right to reasonable accommodation, not necessarily the employee's preferred accommodation. The employee has the responsibility of informing her employer regarding her perceived needs. "[W]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the

13

employee...to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621(5th Cir. 2009)(quoting *Taylor v. Principal Fin. Grp*. 93 F.3d 155, 165(5th Cir. 1996). "When a qualified individual with a disability requests a reasonable accommodation, the employer and the employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *Id.*(quoting *EEOC v. Agro Distrib*., 555 F.3d 462, 471(5th Cir. 2009). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA. However, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)(cited in *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011).

The record demonstrates that during her employment, Plaintiff made requests for accommodation of her colitis condition, namely her requests for a private bathroom in company housing and for time off for medical appointments. There is no dispute that those requests were granted. There is likewise no dispute that the employer defendant was aware of Plaintiff's colitis diagnosis. At issue in

14

this case is what the employer knew or did not know about Plaintiff's colitis-related medication regimen and the side effects of the medications, which Plaintiff alleges caused her failures to pass the company entrance examinations and warranted further accommodation by her employer. It is undisputed that Plaintiff made no mention of her medication side effects to anyone in Youngsville or Houston through the date she failed the entrance exam for the second time and had a termination meeting scheduled with her HR manager.  Per the plaintiff's email communication to her instructor on that date, Simon was also aware of Schlumberger's "no tolerance policy for school failures."  She attended the meeting on November 2, 2012 with the expectation that she would be terminated. It was then, for the first time, that she disclosed the details of her medication side effects and her belief that the side effects caused her to fail the exams.

In support of the motion, Defendant argues that (1) it was not required to engage in the interactive process when Simon made her request for accommodation on November 2, 2012, because its termination decision had already been made per the company's policy, and the request for accommodation by a third opportunity to take the entrance exam was therefore untimely, and (2) the documentation received from Simon's healthcare provider made no reference

15

to the medication side effects referenced by the plaintiff and called for no

accommodation.

It is well-settled that proper accommodation requests under the ADA  are

prospective, according to the EEOC's Enforcement Guidance.    "'Since [a]

reasonable accommodation is always prospective, an employer is not required to

excuse past misconduct even if it is the result of the individual's disability.'"

*Brookins v. Indianapolis Power & Light Co.*, 90 F. Supp.2d 993,

1007(S.D.Ind.2000)(citing U.S.Equal Opportunity Employment Commission,

Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under

the Americans With Disabilities Act at 24, question number 35); see *Davila v.*

*Qwest Corp.*, 113 Fed. Appx. 849, 854(10th Cir. 2004)("[A]s many cases have

recognized in various contexts, excusing workplace misconduct to provide a fresh

start/second chance to an employee whose disability could be offered as an after-

the-fact excuse is not a required accommodation under the ADA.") The Fifth

Circuit has explained that an employer is not required to approve a "retroactive

accommodation" or "second chance" excusing prior misconduct stemming from

the alleged disability. See *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 n. 14(5th

Cir. 1997).  Thus, "[W]hen an employee requests an accommodation for the first

time only after it becomes clear that an adverse employment action is imminent,

16

such a request can be 'too little, too late.'" *Jones v. Nationwide Life Ins. Co.*, 696

F.3d 78, 90(1st Cir. 2012). In the instant case, the court is not faced with a typical

misconduct issue, as was considered in most 'second chance' cases cited by the

parties. Further, even if Plaintiff's request for accommodation relative to a third

entrance exam opportunity may have been untimely when made on November 2,

2012, the record demonstrates that her employer responded to the request by

opening the ADA interactive process and allowing for consideration of the

accommodation request on receipt of additional information from her healthcare

provider. Once started, both parties bear responsibility to participate in good faith.

Defendant argues that on receipt of documentation from Plaintiff's

healthcare provider that Simon could perform her job duties [and] descriptions

with her medical diagnosis of colitis, there was nothing to accommodate, and the

plaintiff's termination was confirmed. Plaintiff argues that the sparse response

from her healthcare provider should have led to further inquiry by the employer,

who shut down further communications. On this key issue, this Court is left to

attempt to isolate the cause of the breakdown in the interactive process, if there

was one, and assign responsibility for it. See *Beck v. University of Wisconsin Bd.*

*of Regents*, 75 F.3d 1130, 1135(7th Cir. 1996). On that issue, there is a paucity of

evidence in the record. Plaintiff seems to have made little effort to obtain

17

information from her physician to respond to the requests of her employer.  She

testified that she told the healthcare provider how to respond to the employer's

inquiries, focusing only on the physical requirements of her job.  On the receipt of

the response from the physician's office, the employer made no further inquiry.

The employer-provided forms for the accommodation analysis were not completed

by the physician, and this Court cannot determine whether all of them were

presented to him.  Neither the defendant's HR manager nor the healthcare provider

were deposed in the case.  Without more, and applying the substantive law in this

case, it is the finding of the court that there remain genuine issues of material fact

and actual fact gaps which preclude summary judgment as presented.  The motion

is therefore DENIED.

Signed at Lafayette, Louisiana this 19th day of December, 2014.


_____
Patrick J. Hanna
United States Magistrate Judge