UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**KIMBERLY SIMON**                                                    **CIVIL ACTION NO. 6:13-cv-03074**

**VERSUS**                                                                      **JUDGE RICHARD T. HAIK, SR.**

**SCHLUMBERGER TECHNOLOGY
CORPORATION**                                                       **MAGISTRATE PATRICK J. HANNA**

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff submits this Memorandum to Defendant's second Motion for Summary Judgment. It must be noted that defendant is arguing multiple issues that have already been decided by this Honorable Court. The court has already stated in its prior ruling:

"In the instant case, the court is not faced with a typical misconduct issue, as was considered in most 'second chance' cases cited by the parties. Further, even if Plaintiff's request for accommodation relative to a third entrance exam opportunity may have been untimely when made on November 2, 2012, the record demonstrates that her employer responded to the request by opening the ADA interactive process and allowing for consideration of the accommodation request on receipt of additional information from her healthcare provider. Once started, both parties bear responsibility to participate in good faith…. this Court is left to attempt to isolate the cause of the breakdown in the interactive process, if there was one, and assign responsibility for it."

Therefore, defendant's arguments regarding the timing of plaintiff's accommodation request and whether it would excuse past "misconduct" is now moot. The only issue that

remains is whether defendant holds responsibility for the breakdown of the interactive process that led to plaintiff's termination. The only argument Defendant makes for this issue is that plaintiff was responsible for communicating with her doctor about the needed accommodation and that the interactive process was completed. However, plaintiff disagrees in that the interactive process was NOT completed; there was a breakdown in the interactive process and such breakdown was caused by the defendant.

## LAW AND ARGUMENT

### The Standard of Review

The dismissal of a claim on summary judgment is proper only if it appears that Plaintiff can prove no set of facts in support of the claims which would entitle her to relief. *OHare v. Global Natural Resources, Inc.*, 898 F.2d 1015 (5th Cir. 1990). Defendant must carry its burden as the moving party to demonstrate that there is no genuine dispute as to any material fact as to plaintiff's claims. The deciding court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 220 (5th Cir. 1991).

### Events Leading up to Plaintiff's Termination and the Breakdown of the Interactive Process

On October 28, 2012, plaintiff moved from her location at Youngsville to Houston in order to take the entrance exam into school and begin the next phase of training. In the weeks prior to her departure, her ulcerative colitis flared up, and plaintiff was put on several medications. She also was suffering from an infection due to her diminished immune system. (*Exhibit A, Simon's medical records, Dr. Alvarez*). It is undisputed that during that time, she

asked her direct supervisor, Adrian Moss, for additional time to be able to take the upcoming entrance exam.  On October 25, 2012, prior to leaving for Houston, plaintiff's medications were switched to a temporary full dose of steroids in order to control her physical symptoms so that she would be able to sit in a classroom for training.

> A. And I said, I'm really sick. I had to get the full dose of steroids, the pill form, because of the fact that there was no way I could even sit in the classroom for eight hours without those steroids. I couldn't physically be there because I would be running to the bathroom every 45 minutes, so. (*Simon Depo. p. 62*).

However, although the medication would relieve the physical symptoms of her condition, it also caused severe anxiety and panic attacks as a side affect. Upon arriving in Houston, the steroids' side affects began to hit plaintiff causing extreme anxiety.

> A. ….because the steroids cause extreme anxiety.  They caused mood swings.  They caused you to be like depression.  Especially with the anxiety.  All I could think was that I was going to fail.  I was crying all day, all night.  I could barely study.  I could barely sleep.  (*Simon Depo. p. 70*).

On October 29, 2012, plaintiff took the entrance exam and needed six more points to pass.  Two days later, on October 31, 2012, plaintiff took the entrance exam again and did not pass by one point.  As a result of her illness and its complications, she was unable to pass the entrance exam in Houston and was sent back to her location in Youngsville to meet with her direct manager, Adrian Moss, and the personnel manager, Mary Lackey.  At that meeting, she was asked why she did not pass, in which she began to discuss her condition.

> A. Well, they didn't -- To be honest with you, they didn't particularly ask me specifically.

They brought me in and they asked me what happened.

Q. Okay.

A. They said, what happened? You know, why do you think this happened?

(*Simon Depo. p. 55*)

A. Well, that would have been during the first meeting with Adrian Moss and Mary Elizabeth…. And some of what I said, I've been extremely sick. You know, I just said, I tried to tell Adrian before I left that I was not ready to go, you know, and go to this school session, that I really need to put it off. And that's when I -- that kind of sums up what I said. And then when I left the room --…, I guess, so they could discuss what I had said. And then I came back in the room and they said that..-- well, actually I think Adrian -- Adrian came out and said: Everything is going to be okay. He said: <u>I have no problem rescheduling the school for you. He said: She just needs some paperwork; and when she gets that, you will be fine, pretty much</u>. (*Simon, Depo. p. 106*).

At no time in that first meeting did anyone inform plaintiff that it was too late to accommodate her disability or that she was going to be automatically terminated. In fact, it is undisputed that her employer began the interactive process.

Plaintiff was given forms for her physician to fill out regarding her illness. Plaintiff's physician sent back paperwork to Schlumberger regarding plaintiff's physical limitations stating that she was able to perform her physical job requirements with her diagnosis of colitis. (*Exhibit B*). Plaintiff's physician never sent back the Clarifying Accommodations Form (*Exhibit C*) to Schlumberger, which likely would have answered questions regarding plaintiff's accommodation request for taking the exam. It is still unclear whether or not plaintiff's physician ever even

received the Clarifying Accommodations Form to fill out because it is also not located in her medical records.  Plaintiff even contacted Mary Elizabeth Lackey regarding confusion over the paperwork informing Lackey that her physician does not see anything to fill out on the paperwork but that it looks like a physical exam.  She specifically asked Lackey what her doctor needed to fill out on the paperwork.  Lackey's response is "What we would like to know… is there anything on the physical requirements that you cannot do due to your chronic illness?" (*Exhibit D, Emails between Lackey and Simon* )

     Although she was confused, plaintiff complied in giving Lackey the information that Lackey herself stated she needed.   However, plaintiff never claimed that she could not perform the physical aspects of her job duties, only that she needed an accommodation in order to successfully pass the entrance exam due to the mental side affects of her medicine. When the paperwork was returned, instead of inquiring further into receiving the correct completed paperwork or interacting with plaintiff, Mary Lackey cut off the interactive process completely and instead terminated Ms. Simon from employment.

     Q.  All right. And in this second meeting, did they go over the paperwork that the doctor had submitted?

     A. She didn't go over it. She said: I've received the paperwork. And she said that it doesn't say anything on here about you having a condition or anything. And I said to her: Well, I said, you can call them. I signed authorization for you to call and talk to them. Let's just call them right now. And she just said: No, that's not necessary. She wouldn't call them. And I said: Well, I have my prescription with me. I can show you my medication. She said: It doesn't say anything about medication. She just basically said that -- she didn't

--basically, to sum it up, she said she didn't get the documentation that would have allowed me to reschedule the school. She said that if she had, she probably would have let me go on a short-term medical leave or something of that nature. But because she did not get anything back, what she was looking for, that she would not be able to do that. . (*Simon, Depo. p. 83-84*).

If plaintiff would have been able to take some kind of leave with correct paperwork from her doctor, it is apparent that there was no undue hardship in providing such an accommodation. Had Schlumberger continued the interactive process and conversed with plaintiff and her physician regarding the actual limitations she was requesting an accommodation for, plaintiff likely would be still be employed with Schlumberger to this day.

The EEOC Guidance states:

"If an employee provides insufficient documentation in response to the employer's initial request, the employer should explain why the documentation is insufficient and allow the employee an opportunity to provide the missing information in a timely manner. The employer also should consider consulting with the employee's doctor (with the employee's consent) before requiring the employee to go to a health care professional of its choice."

http://www.eeoc.gov/policy/docs/guidance-inquiries.html#N_56_.

Mary Elizabeth Lackey knew that the paperwork was incomplete, but instead of allowing plaintiff to fix the confusion and retrieve the correct information as she was requesting, Lackey automatically stopped the interactive process and terminated plaintiff.

Q.  You don't get back from her doctor the Clarifying Accommodation Form… is that correct?
A. Correct.

Q.  Did you ever ask her doctor for it?

A. No.

Q.  Why Not?

A. It's in our protocol we don't contact the doctor and say you sent us back a form that says that the employ is not disabled….The Clarifying Accommodations wasn't necessary, because there were no clarifying accommodations. The employee could perform the job duties.

Q. Where on the Functional Job Description does it say anything about the ability to take an exam?

A. I don't believe it's on the functional job description, but on the Clarifying Accommodation Form, there is a comment section where the doctor could provide that information as well.

Q. Right. Could provide the information, but you never asked for the information once you didn't receive it from the doctor, did you?

A.  I did not personally ask…

(*Lackey Depo. pp. 65-66*)

     Mary Elizabeth Lackey stated in her deposition that protocol is that they do not contact the doctor regarding the information that is sent back to them. However, in Lackey's letter to plaintiff, Kimberly Simon, dated November 2, 2012 regarding plaintiff's accommodation request, she specifically requests Ms. Simon to sign a medical release form in order to discuss her condition with her physician.  Why would a medical release form be requested from plaintiff in order to speak with her physician if there is some sort of protocol that they do not contact the doctor in the first place?  Instead of continuing the interactive process, plaintiff was fired.  After giving plaintiff prior accommodations for the same illness, Schlumberger also likely wanted to

get rid of someone who presented to be a problem.

Defendant cites two cases in support of its argument, *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155 (5th Cir. 1966) and *McAlpin v. Nat'l Semiconductor Corp.*, 921 F. Supp. 1518 (N.D. Tex. 1996).

However, in *Taylor,* the court noted that Taylor never mentioned he had bipolar disorder, any limitations resulting therefrom, or the need for any specific accommodations.  The court stated that the initial burden rests primarily upon employee, or his health care provider, to specifically identify the disability and resulting limitations and to suggest reasonable accommodations.  Here, it is undisputed that Schlumberger knew of Ms. Simon's condition.  Schlumberger was informed of the limitations Ms. Simon had in preparing for the exam due to side effects of her medication and suggested an accommodation for more time in order to pass the exam.  Therefore, this burden was met.

In *McAlpin*, the court noted that NSC repeatedly asked McAlpin to get a more specific definition of the chemicals she must avoid, but McAlpin made no efforts in this regard after presenting NSC with two notes from her physician. And, while McAlpin complains that NSC never contacted her physician for more information, there is no evidence that she requested NSC do so. Moreover, there is no evidence that McAlpin ever signed a medical release form for NSC, despite at least one request from NSC that she do so. Here, Ms. Simon only relayed to her doctor what Mary Elizabeth Lackey herself stated that she needed in order to process the accommodation request.  Upon realization that there was no statements in the paperwork regarding the side effects of her medication and how it would affect her abilities to pass the exam, she requested to contact her doctor or for Lackey to contact her doctor to correct the

confusion.  Ms. Simon, per Schlumberger's request, also gave her doctor written authorization for her employer to speak with him regarding her condition.  However, this request fell on deaf ears, and now Schlumberger's position is that it isn't "protocol" to contact her doctor.

Instead of engaging with plaintiff and allowing her to get the correct information needed to process her accommodation request, her employer would not allow her to respond and cut short the interactive process, and she was terminated.  "When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 736 (5th Cir.1999).  An employee's request for reasonable accommodation requires a great deal of communication between the employee and employer.  *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1134-35 (7th Cir.1996).  Both parties bear responsibility for determining what accommodation is necessary.  *Beck,* 75 F.3d at 1135. No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility. *Beck,* 75 F.3d at 1135.

Here, Schlumberger is the cause of the breakdown whereas Kimberly Simon specifically asked Lackey to call her physician and clear up the confusion of the paperwork which such requests were ignored.

## CONCLUSION

Accordingly, when viewing these issues in light most favorable to Simon, there is a genuine dispute regarding whether Schlumberger discriminated against plaintiff under the ADA by failing to accommodate her disability and terminating her employment. Therefore, Defendant's Motion for Summary Judgment should be denied.

Respectfully Submitted:

*s/Gregory J. Miller*
Gregory J. Miller No. 17059
3960 Government Street
Baton Rouge, LA 70806
Telephone:   (225) 343-2205
Facsimile:   (225) 343-2870

## CERTIFICATE OF SERVICE

I, Gregory J. Miller, hereby certify that a copy of the foregoing has this day been sent electronic filing to counsel of record as follows:

>Samuel Zurik, III
>Rachel Linzy
>THE KULLMAN FIRM
>1100 Poydras Street, Suite 1600
>New Orleans, LA  70163
>
>Josh C. Harrison
>THE KULLMAN FIRM
>600 University Park Place, Suite 340
>Birmingham, Alabama  35209

Baton Rouge, Louisiana, this 9th day of June, 2015.

*s/Gregory J. Miller*
Gregory J. Miller